IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONALD PREBE,

               Plaintiff,                Civil No. 08-603-AA

                                       OPINION AND ORDER

    vs.

YAMHILL COUNTY and WILLIAM A. GILLE,

               Defendants.

_____

Shelley D. Russell
Crispin Employment Lawyers
500 Plaza West, 9600 SW Oak Street
Portland, OR 97223
      Attorney for Plaintiff

Karen O'Kasey
Sean M. Bannon
Hoffman, Hart & Wagner, LLP
Twentieth Floor
1000 S.W. Broadway
Portland, OR 97205
      Attorneys for Defendants

1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff Ronald Prebe brings this employment action against defendants Yamhill County ("County") and William A. Gille ("Gille"), asserting civil rights violations under 42 U.S.C. § 1983 and violation of state law under Or. Rev. Stat. § 659A.203 (unlawful retaliation).  Plaintiff alleges the County and Gille retaliated against him in violation of his First Amendment rights and whistleblower protections provided under Oregon state law. The case is before this court on defendants' motion for summary judgment.  Defendants' motion is denied.

<u>Facts</u>

Plaintiff began working for the County on February 28, 2000, as a utility worker.  Defendant Gille was the Director of the Department of Public Works for the County and plaintiff's supervisor.  In the summer of 2004, plaintiff reported to the union president, Sonya Oleheiser ("Oleheiser") that he had observed County employees participating in what he believed to be illegal oil dumping.  Neither plaintiff nor Oleheiser pursued the matter further during 2004.  In 2006, plaintiff and Oleheiser met with the County's human resources officer, Steve Mikami ("Mikami").  During this meeting, plaintiff reported three separate incidents of oil dumping during 2004 and 2005, alleging that between 600 and 700 gallons had been dumped during one incident and that over 800 gallons had been dumped during

another.  He told Mikami he was present during two of the
incidents and had overheard coworkers talk about the third
incident.  Plaintiff implicated Roadmaster Susan Mundy ("Mundy")
and road crew supervisor Roy Panschow ("Panschow") in the
dumping, alleging they were present when the dumping occurred.
Plaintiff indicated that fear of retaliation was a motivating
factor in his decision not to report the incidents sooner.

On April 27, 2006, the Oregon State Police were notified of
plaintiff's report.  The Police opened an investigation under the
direction of Trooper Craig Ball ("Ball").  Also on April 27,
Gille placed Mundy and Panschow on paid administrative leave
pending the results of Ball's investigation.

Ball's investigation included interviews with plaintiff,
Mundy, and Panschow, as well as with another road crew
supervisor, Pete Lindberg ("Lindberg"), and several of
plaintiff's fellow road crew members.  Mundy and Panschow denied
directing, approving, being present for, or having any
information about oil dumping.  By contrast, not a single road
crew member denied oil dumping — all those interviewed confirmed
they had seen, participated in, or heard about dumping.  However,
none of the witnesses' estimates of the volume of oil dumped
approached plaintiff's report of over 1,000 total gallons.  Other
estimates ranged from 10 to 350 gallons, and one crew member said
he overheard other crew members discussing a dump of 400 to 600

gallons.  Several of plaintiff's coworkers echoed his fear of
retaliation, particularly from Mundy.

During her interview with Ball, Mundy identified plaintiff
and two other crew members, Tammy Garvey ("Garvey") and Lee
Jeffries, as "troublemakers" who were disruptive in the workplace
and made trouble for management.  She cited these employees' BOLI
discrimination claims and union claims concerning inadequate
working conditions and treatment as evidence of this
disruptiveness.  Garvey had previously filed a BOLI
discrimination claim, and plaintiff had filed multiple worker's
compensation claims.

On May 22, 2006, Lindberg delivered a copy of a written
complaint against plaintiff to defendant Gille.  The complaint
was submitted by fellow work crew member Steve Kindel ("Kindel"),
and accused plaintiff, on February 22, 2006, of driving at
dangerously high speeds while in the work zone.  Two weeks later,
on June 5, 2006, Lindberg provided Gille with a note detailing a
February 10, 2006, phone call implicating plaintiff and Garvey in
running a truck off the road.  Lindberg says he turned the notes
over to Gille in response to Gille's request that he "gather up
all his notes" on plaintiff.  Gille believed the complaints were
valid but found the three and four month delays between alleged
incidents and reports "suspicious."  Gille did not take action,
finding the complaints "stale."

4 - OPINION AND ORDER

Later that week, on June 7, 2006, another crew member complained to Lindberg that plaintiff failed to clean up an oil slick after a diesel spreader "blew up on him." This incident was mentioned in a June 10, 2006, email to Gille from John Toledo ("Toledo"), a flagger. The email also contained complaints about plaintiff driving too fast through the work zone. In the email, Toledo wrote that "some people will use the fact that they are whistle blowers to allow themselves to do as they please." Gille investigated Toledo's accusations, but did not take action because he did not find a disciplinary issue. Gille testified that people were trying to "dig up dirt" on plaintiff, and that he counseled each of them not to retaliate when submitting their complaints.

On June 21, 2006, in a second interview with Ball, plaintiff indicated that he believed he was being retaliated against. Gille was aware of plaintiff's allegations but did not follow up with plaintiff.

After Ball completed his investigation, the County's in-house counsel ordered an internal investigation and credibility determinations for Mundy, Panschow, and plaintiff. This investigation was conducted by attorney Susan Cooper ("Cooper"). Cooper concluded that oil dumping did occur, but that due to conflicting testimony it was not possible to discern precisely how much oil had been dumped. Cooper found Mundy and Panschow's

denial of involvement not credible, specifically that they had failed to participate truthfully in either the Ball investigation or the internal inquiry.  Cooper found plaintiff more credible than Mundy or Panschow, but stated plaintiff's credibility was questionable on the issue of oil volume, indicating that he may have exaggerated the amount dumped.

Cooper's report also described the development of "pro-management," "anti-management," and "apparently neutral" factions within the work crew.  Plaintiff also referenced these factions in his June 21 interview with Ball.  Kindel, who initiated the May complaint regarding plaintiff's unsafe driving in the work zone, is identified through Cooper's report as part of the "pro-management" group.  Toledo, who wrote the email complaining of plaintiff's driving and the oil slick, is identified as "apparently neutral."

As a result of the Ball and Cooper reports, Mundy, Panschow, and plaintiff all received letters of reprimand for violating County rules of conduct requiring honesty and prohibiting false statements.  Mundy and Panschow's letters additionally reprimanded them for engaging in activities that reflected unfavorably on the County.  All three letters contained paragraphs explicitly directing the recipients not to take any retaliatory action against fellow County employees.  Plaintiff grieved his discipline through the union, and his letter of

reprimand was reduced to non-disciplinary verbal counseling.

The parties dispute whether plaintiff's job duties were materially altered that summer and fall, but plaintiff alleges his job changed in two fundamental ways. First, he was shifted away from more preferential heavy equipment assignments to less desirable tasks. Second, he was not "called out" for emergency overtime work as often. Plaintiff alleges that he was nearly always the "first call" for emergency overtime work prior to 2006, and that after he reported the oil dumping he was only contacted for emergency overtime work once.

On November 3, 2006, Mary Lavoie, a flagger, filed a complaint alleging that plaintiff and Garvey had both driven dangerously close to her in the work zone. She stated each had swerved toward her and that she would have been hit if she had not moved. A separate complaint was made by a private citizen who did not identify the driver, but Gille concluded the driver was plaintiff based on Lavoie's identification. Plaintiff denied driving dangerously close to Lavoie. Lindberg was assigned to investigate the incident and recommended firing plaintiff in his report. Instead, on November 30, 2006, plaintiff was given a 10-day suspension without pay and a year-long reduction in pay. Plaintiff again grieved the discipline and the one-year pay reduction was lifted. Gille testified that Garvey was not similarly disciplined because there was no corroborating citizen

complaint in her case.

On December 8, 2006, Gille received notice of plaintiff's tort claim against the County.  In February 2007, plaintiff filed a BOLI complaint for retaliation.

Several months later, on May 3, 2007, a non-County contractor, Mark Taylor ("Taylor"), reported that he was run off the road by a County truck.  Taylor could not identify the vehicle's driver or the truck number but reported that the truck was white and that he clearly saw the County emblem on the side of the truck.  Plaintiff denies he was the driver who ran Taylor off the road.  Gille testified it had to be plaintiff based on the small number of County trucks in the area that day and a timeline developed using phone records and driving the route to obtain accurate time estimates.  Plaintiff maintains there is evidence disputing that he was the driver in question, citing the fact that a truck he was not driving was initially identified as the vehicle involved in the incident.

One June 5, 2007, plaintiff's employment with the County was terminated.  Gille maintains he saw no other option in terms of progressive discipline, given that plaintiff had already been suspended without pay.

Prior to 2006, plaintiff's employment record with the County was positive.  In February 2004, on the strength of a letter from Gille citing the "total support" of plaintiff's supervisors and

coworkers, plaintiff was promoted to heavy equipment operator.
Plaintiff received an employee evaluation in June 2004 in which
he was rated "meets" or "above" all standards.  This evaluation
was signed by Gille, Mundy, Panschow, and Lindberg.  Gille
characterized plaintiff as a valuable employee with "considerable
skill from a truck driving perspective," and Panschow rated
plaintiff's pre-2005 road crew performance as "good."

Standards

Summary judgment is appropriate "if the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  Substantive law on an issue determines
the materiality of a fact.  T.W. Elec. Serv., Inc. v. Pac. Elec.
Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Whether
the evidence is such that a reasonable jury could return a
verdict for the nonmoving party determines the authenticity of a
dispute.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

The moving party has the burden of establishing the absence
of a genuine issue of material fact.  Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986).  If the moving party shows the absence
of a genuine issue of material fact, the nonmoving party must go
beyond the pleadings and identify facts which show a genuine

9 - OPINION AND ORDER

issue for trial.  Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  T.W. Elec., 809 F.2d at 630.  In an employment discrimination case, "if a rational trier of fact could, on all the evidence, find that the employer's action was taken for impermissibly discriminatory reasons," summary judgment for the moving party is inappropriate.  Wallis v. J.R. Simplot, 26 F.3d 885, 889 (9th Cir. 1994).

The Ninth Circuit Court of Appeals has made clear that in an employment case, "the amount that must be produced in order to create a prima facie case is very little.  Normally, when such evidence has been introduced, a court should not grant summary judgment to the defendant on any ground relating to the merits." Sischo-Nownejad v. Merced Cmty. College Dist., 934 F.3d 1104, 1111 (9th Cir. 1991).  This is because "an employer's true motive in an employment decision is rarely easy to discern . . . . [W]ithout a searching inquiry into those motives, those [acting for impermissible motives] could easily mask their behavior behind a complex web of post hoc rationalizations."  Lowe v. City of Monrovia, 775 F.2d 998, 1009 (9th Cir. 1986).

Discussion

A. First Amendment Retaliation

1. County Liability

A governmental entity may be liable under § 1983 only if the
plaintiff shows: (1) he was deprived of a constitutional right;
(2) the municipality has a policy; (3) the policy amounts to a
deliberate indifference to his constitutional rights; and (4) the
policy is the moving force behind the constitutional violation.
Mabe v. San Bernadino County Dep't of Pub. Soc. Servs., 237 F.3d
1101, 1111 (9th Cir. 2001). Governmental liability for
unconstitutional conduct even reaches informal policies that
occur based on practices of state officials that are customary
and well-settled.  Monell v. Dep't of Soc. Servs., 436 U.S. 658,
691 (1978).  However, "[p]roof of a single incident of
unconstitutional activity is not sufficient to impose liability
under Monell, unless proof of the incident includes proof that it
was caused by an existing, unconstitutional municipal policy,
which policy can be attributed to a municipal policymaker."
Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).  An
official policy may manifest as a policy of inaction amounting to
a failure to protect constitutional rights.  Lee v. City of Los
Angeles, 250 F.3d 668, 681 (9th Cir. 2001).  A municipality may
also be held liable if the plaintiff can show the constitutional
deprivation was due to "a deliberate choice . . . made from among

various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986).

In his first claim for relief, plaintiff alleges that the County has a policy or custom of punishing employees who speak out against the County. This policy can be seen, plaintiff argues, in Gille's repeated failure to discipline coworkers who retaliated by making dubious allegations against plaintiff, his willingness to accept questionable evidence against plaintiff when investigating the unsafe driving complaints, and his choice of excessive punishments when other employees who had behaved similarly were not punished and when alternative, less severe sanctions were available. Plaintiff relies on Gomez v. Vernon, where inmates working as law clerks in an Idaho prison alleged retaliation against inmates who filed lawsuits or utilized grievance procedures. 255 F.3d 1118, 1122 (9th Cir. 2001). The Ninth Circuit held that "failure to investigate retaliation complaints [and] the lack of reprimand or discipline for the officers involved even when their supervisors were aware of the complaints" lent sufficient support to "the district court's finding that there was a policy or custom that led to violation of the inmates' rights." Id. at 1127.

Defendants respond that plaintiff has not provided

sufficient evidence of a policy or custom because plaintiff has
provided no evidence of First Amendment discrimination against
any other County employee.  However, the Supreme Court has
indicated that only <u>one</u> application of a policy or custom is
necessary for <u>Monell</u> liability to attach.  <u>Pembaur</u>, 475 U.S. at
478 n.6.  Defendants also argue that plaintiff has failed to
demonstrate that coworkers retaliated against him for his oil
dumping report by bringing questionable allegations against him,
and that Gille failed to discipline those coworkers for unfounded
complaints.  However, to survive a motion for summary judgment
plaintiff need not demonstrate conclusively that the elements of
his prima facie case are true; he need only show there is a
genuine issue of triable fact.  <u>Sischo-Nownejad</u>, 934 F.2d at 1110
("[The non-moving party's] burden on summary judgment [is] merely
to establish a prima facie case and, once the employer
articulate[s] a legitimate, nondiscriminatory reason for its
actions, to raise a genuine factual issue as to whether the
articulated reason was pretextual.")  Construing the evidence in
the light most favorable to plaintiff, a reasonable fact finder
could conclude that Gille's failure to investigate questionable
complaints against plaintiff or to discipline the individuals
filing the complaints, together with his choice of severe
punishments even when exculpatory evidence was available,
presents at least a disputed issue of fact as to whether a County

policy or custom of First Amendment discrimination existed.

2. Defendant Gille's Liability

_____In his second claim for relief, plaintiff alleges that Gille violated his civil rights by retaliating against him for exercising his First Amendment right to free speech.  42 U.S.C. § 1983.

The freedom of speech guaranteed by the First Amendment protects government employees from termination because of their speech on matters of public concern.  Bd. of County Com'rs, Wabaunsee County, Kan. v. Umbehr, 518 U.S. 668, 675 (1996).  For a plaintiff to prevail on a claim that he was retaliated against for exercising his First Amendment rights, he must show by a preponderance of the evidence that the conduct at issue was constitutionally protected, that he was subjected to an adverse employment action, and that his speech was a substantial or motivating factor in his termination.  Id.; See also Coszater v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003).  If plaintiff succeeds in meeting his burden, defendants can escape liability by showing that they would have taken the same action absent the protected conduct.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

_____In order to retaliate against an employee for speech, the employer must first have knowledge of the speech.  Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 750-51 (9th

Cir. 2001).  There is no dispute that the County knew about plaintiff's oil dumping report.  Further, neither party disputes that plaintiff's report of oil dumping was of public concern. The parties also agree that plaintiff's termination from his position constitutes an adverse employment action.  The dispute, therefore, is whether plaintiff's oil dumping report was a substantial or motivating factor in his termination.

Defendants argue that there is no evidence, direct or circumstantial, which supports the conclusion that plaintiff's report caused his termination.  I disagree and find a genuine issue of material fact regarding whether plaintiff's speech was a substantial or motivating factor in his termination.  In order to prove that plaintiff's speech was a substantial or motivating factor in his termination, he must present either direct evidence, or at least one of three general types of circumstantial evidence.  Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002).  The Ninth Circuit recognizes the following three types of circumstantial evidence:  proximity in time between the protected speech and the alleged retaliation, employer's expressed opposition to the speech, and evidence that the reasons proffered by the employer were false and pretextual. Id.

Temporal proximity alone can be used to establish evidence of causation, but the temporal proximity must be "very close."

Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).  It
is not the case, however, that the initial protected activity
must be closely followed by the final adverse employment action.
A series of events which closely follow one another may provide a
sufficient link between the protected conduct and the
retaliation.  See Yartzoff v. Thomas,  809 F.2d 1371, 1375 (9th
Cir. 1987) (series of transfers of job duties and poor
performance reviews that began three months after filing a Title
VII grievance and continued over 18 months constituted prima
facie evidence of causation).

       The parties agree that there exists no admissible direct
evidence of retaliatory intent.  Therefore, I will examine the
circumstantial evidence proffered by plaintiff.  Plaintiff does
not appear to allege that his employer expressed opposition to
his report of the oil dumping; thus, only the first and third
categories of circumstantial evidence are relevant here.

       First, plaintiff alleges that the coworker and citizen
complaints against him in May and June 2006, coming so closely
after his April 2006 complaint, represent the beginning of the
chain of events that ultimately led to his termination.
Defendants respond that these complaints are improperly included
in the timeline because defendant Gille chose not to act on them
and so they did not result in any adverse employment action.
Regardless of whether these complaints are properly included,

16 - OPINION AND ORDER

plaintiff's letter of reprimand in July 2006, his allegations
that his job duties changed in the summer and fall of 2006, his
suspension without pay in November 2006, delivery of the tort
claims notice in December 2006, filing the BOLI complaint in
February 2007, and plaintiff's termination in June 2007, form a
chain of events from which a reasonable juror could infer
causation.

Second, plaintiff alleges a number of facts which, he
argues, when read together demonstrate that the County's
reasoning for terminating him was false and pretextual.  I find
that there exist several genuine issues of material fact
regarding the County's proffered reason for plaintiff's
termination.

Plaintiff provides evidence that he was punished more
severely than coworkers who were accused of similar infractions,
or as severely as coworkers accused of more serious infractions.
Plaintiff alleges this choice of disparately severe punishment
supports his argument that defendants' proffered reasons for the
termination are pretextual.  First, although there were widely
varying amounts reported in Ball's interviews about the oil
dumping and the actual amount of oil dumped was never
established, plaintiff was the only person reprimanded.  In fact,
his initial punishment was the same as the punishment for Mundy
and Panschow, both of whom denied that oil dumping had occurred.

17 - OPINION AND ORDER

Second, the coworker complaint in November 2006 identified two drivers for the same infraction, plaintiff and Garvey, but plaintiff was punished more severely than Garvey.  Finally, plaintiff alleges he was given the harshest punishment allowable under the union contract in response to the May 2007 complaint, despite the existence of evidence that called into question his culpability and the availability of alternative, less severe, sanctions.

Defendants contend that in the first instance, the County has a special interest in disciplining employees who exaggerate when making reports against their supervisors, and in the second instance, there was more evidence against plaintiff than against Garvey.  Defendants also assert Gille made a thorough investigation before drawing any conclusions regarding the May 2007 complaint.  All of these assertions, if true, might justify defendants' disparate treatment of plaintiff.  However, plaintiff's evidence sufficiently raises the question of pretext.

In sum, plaintiff presents sufficient circumstantial evidence that, when viewed together, creates a genuine issue of material fact regarding defendants' retaliatory intent.  Thus, defendants' motion for summary judgment on plaintiff's § 1983 claim is denied.

B. Whistleblower Claim

Plaintiff's third claim for relief alleges that defendants

violated the Oregon whistleblowing statute. Or. Rev. Stat. §
659A.203(1)(b). The statute makes it unlawful for an employer to
retaliate against employees for disclosing information they
reasonably believe is evidence of a "violation of any federal or
state law, rule or regulation by the state, agency or political
subdivision" or a "substantial and specific danger to public
health and safety." Id. at 659A.203(1)(b)(A)-(B). In deciding
state law retaliation claims, this court applies the Title VII
framework, so plaintiff succeeds with a prima facie claim when he
demonstrates that: 1) he engaged in protected activity; 2) he was
subjected to an adverse employment action; and 3) there was a
causal link between the protected conduct and the adverse
employment action. See Ryan v. Patterson Dental Supply, Inc.,
2000 WL 640859 (D. Or. 2000); see also Trent v. Valley Elec.
Ass'n, 41 F.3d 524, 526 (9th Cir. 1994). Defendants asserts that
plaintiff cannot meet the third element.

Oregon courts have articulated plaintiff's burden on
causation as follows: "[W]hether, in the absence of the
discriminatory motive, the employee would have been treated
differently." Hardie v. Legacy Health Sys., Inc., 167 Or. App.
425, 433, 6 P.3d 531 (Or. App. 2000). Plaintiff argues that if
he had not reported the oil dumping, he would not have been
terminated. Plaintiff relies on Scruggs v. Josephine County,
where plaintiff, a female employee of the Josephine County

19 - OPINION AND ORDER

Sheriff's Office, filed a sexual harassment complaint against a male sergeant.  2008 WL 5262717, at *3 (D.Or. 2008).  The Sheriff's Office terminated plaintiff, alleging she leaked confidential information, was insubordinate and untruthful.  Id. The Sheriff's Office, "inexplicably" relying on the testimony of a private citizen rather than that of the plaintiff, "a long term very good employee," determined that plaintiff had leaked the information even though she absolutely denied the allegations. Id.

Plaintiff contends that the facts in Scruggs are similar to the facts here, noting that he also had a very good record of long term employment leading up the oil dumping complaint, that a series of alleged infractions followed the complaint, and that the County relied on the testimony of private citizens in disciplining him for unsafe driving violations despite his assertion he had not been the driver in the incidents in question.  In drawing these similarities, plaintiff incorrectly states that Gille relied on the investigation of Panschow, one of the two supervisors plaintiff accused, concerning the November 2006 and May 2007 complaints that ultimately resulted in his termination.  While there is evidence in the record to support that Lindberg, another supervisor, conducted or assisted in the investigations, there is no indication Panschow conducted any part of the investigations.  It is worth noting, however, that

while Lindberg was not one of the supervisors plaintiff accused, he was the supervisor who forwarded the complaints regarding the alleged February 2006 incidents to Gille. Gille deemed these complaints "stale" and "suspicious" based on the several month delay between the incidents and the complaints, and due to the complaints' proximity to plaintiff's oil dumping report.

Defendants argue that Scruggs is inapplicable to the facts at bar, citing evidence that the May 2007 driving complaint was thoroughly investigated and that plaintiff had been personally identified by a coworker in the November 2006 dangerous driving complaint. Plaintiff, however, correctly states that there were inconsistencies in the evidence during the May 2007 investigation. Plaintiff also had no history of reckless driving complaints prior to making the oil dumping report. While there are salient differences between the facts in Scruggs and those in the instant case, there are also important similarities that highlight the disputed issues of fact surrounding defendants' adverse employment actions taken against plaintiff. I find that plaintiff has demonstrated a triable issue of fact as to whether, absent his oil dumping report, defendants would have terminated him. Defendants' motion for summary judgment on the Oregon whistleblowing claim is therefore denied.

///

///

21 - OPINION AND ORDER

<u>Conclusion</u>

Defendants' motion for summary judgment (doc. 10) is denied.

Defendants' request for oral argument is denied.

IT IS SO ORDERED.

Dated this  9   day of July 2009.


        /s/ Ann Aiken
                 Ann Aiken
        United States District Judge